**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND (Greenbelt Division)**

| | |
|---|---|
| **FANNIE JOHNSON**<br><br>Plaintiff<br>**v.**<br><br>**OCWEN LOAN SERVICING, LLC.**<br><br>Defendant | Case No. 8:15-cv-2654-TDC |

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**&**
**CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT FOR DECLARATORY RELIEF**

Respectfully submitted,

*//ss//Phillip R. Robinson*__________________
Phillip R. Robinson
CONSUMER LAW CENTER, LLC
8737 Colesville Road, Suite 308
Silver Spring, MD 21910
(301) 448-1304
*Attorney for Plaintiff*

## TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | Introduction | 4 |
| II. | Factual Background | 6 |
| | A. The Johnsons' Chapter 13 Reorganization & Ocwen's Knowingly False and Deceptive Threats Post-Bankruptcy Confirmation | 6 |
| | B. Johnson's Notifications to Ocwen of Its Errors Were Ignored | 8 |
| | C. Ms. Johnson's Well Pled Damages and Losses | 8 |
| | D. The Undisputed, Material Facts In Support of Johnson's Cross Motion for Partial Summary Judgment | 9 |
| III. | Standard of Review | 10 |
| | A. Motion to Dismiss | 10 |
| | B. Motion for Summary Judgment & Judicial Estoppel | 13 |
| IV. | Argument | 14 |
| | A. Under Principles of Res Judicata, Johnson is Entitled to the Entry of Partial Summary Judgment in the form of a Declaration of Law that Ocwen is Not Entitled to Claim Now or Otherwise that Johnson Failed to Make All the Required Payments in her Successful Chapter 13 Bankruptcy | 14 |
| | B. Alternatively, Johnson is Entitled to the Entry of Partial Summary Judgment in the form of a Declaration of Law that Ocwen is Not Entitled Claim Now or Otherwise that Johnson Failed to Make All the Required Payments in her Successful Chapter 13 Bankruptcy on the Basis of Estoppel | 20 |
| | C. Assuming *Arguendo*, the Court Disregards Ocwen's Prior Judicial Statements Described in §§ i & ii, *supra*, The Claims Presented in this Action Were Not Litigated in the Prior Bankruptcy Proceeding Since They Arose Post-Confirmation and Otherwise Did Not Accrue Until After the Conclusion of the Bankruptcy Action | 22 |
| | D. Since Certain of Her Claims Accrued After the Conclusion of Ms. Johnson's Bankruptcy, The Doctrine of *Res Judicata* Does Not Apply to The Claims She Has Presented to the Court (But Does Apply to Ocwen's Argument Advanced in this Action) | 23 |

**TABLE OF CONTENTS**

Page

E. Ms. Johnson Does Not Assert Any Claims Which Accrued Before Three Years Before the Commencement of This Action; However Any Factual Allegations Related to Acts and Omissions More Than Three Years Before the Commencement of this Action Are Relevant and Material to the Actual Claims Asserted by Plaintiff 26

F. Ms. Johnson Has Stated Proper Claims Under the MCPA and MCDCA 27

G. Ms. Johnson Has Stated Proper Claims Under the Maryland Mortgage Fraud Protection Act 36

H. Plaintiff has Stated Plausible and Proper Claims Against Ocwen for its Violations of the New Requirements of the Real Estate Settlement Procedures Act Effective Since January 10, 2014 40

I. Ms. Johnson Has Stated Proper Claims Against Ocwen for Injunctive, Declaratory, and Common Law Accounting Related to her Mortgage Loan 49

V. Conclusion 49

Plaintiff Fannie Johnson ("Johnson"), by and through her undersigned counsel, Phillip Robinson and the CONSUMER LAW CENTER, LLC, hereby opposes Defendant Ocwen Loan Servicing, LLC's ("Ocwen") Motion to Dismiss Plaintiff's Amended Complaint (ECF. 15). Johnson also cross moves for an entry of partial summary judgment against Ocwen asking for a declaration of law on the basis of res judicata, judicial estoppel and/or equitable estoppel that Ocwen is not permitted in this action or otherwise from asserting factual conditions expressly contrary to factual certifications made by it to the United States Bankruptcy Court for the District of Maryland. In support of her opposition and cross motion for partial relief, Ms. Johnson states:

## I. INTRODUCTION

Ocwen's primary argument in support of its motion to dismiss each and every claim against it in this action is based upon a knowing disregard of its own prior, judicial judgment statements. Specifically, Ocwen claims Johnson's previous bankruptcy action somehow forecloses her from now pursuing claims against it which (i) accrued after her Chapter 13 bankruptcy plan[1] was confirmed and (ii) after she had successfully obtained her Chapter 13 discharge.

---

1 *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 264, 130 S. Ct. 1367, 1373, 176 L. Ed. 2d 158 (2010)("[A] Chapter [13 Plan] permits individual debtors to develop a plan to repay all or a portion of their debts over a period of time specified in the plan. See *Nobelman v. American Savings Bank,* 508 U.S. 324, 327, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993); see also §§ 301(a), 1321; Fed. Rule Bkrtcy. Proc. 3015(b). A proposed bankruptcy plan becomes effective upon confirmation, see §§ 1324, 1325, and will result in a discharge of the debts listed in the plan if the debtor completes the payments the plan requires, see § 1328(a)"). *See also* 9D Am. Jur. 2d Bankruptcy § 3026 ("Congress intended Chapter 13 of the Bankruptcy Code to be utilized by individuals with regular income for the purpose of adjusting the debts of all creditors in payment of those debts over an extended period of time. In essence, a Chapter 13 plan is a contract between the debtor and the debtor's creditors that enables the debtor to extend and adjust his or her debts. Upon completion of a Chapter 13 plan, the debtor is entitled to a broad discharge of his or her obligations")(footnotes omitted).

Respectfully, since Ocwen itself certified to the Bankruptcy Court for the District of Maryland that Johnson had made all payments required under her Chapter 13 plan (which is a true fact), Ocwen is prohibited in this action and otherwise to claim, directly or indirectly, that Johnson failed to make all the required payments during her Chapter 13 plan. Ocwen's primary argument in support of its Motion to Dismiss therefore should be denied and Ms. Johnson is entitled to the entry of partial summary judgment in her favor that she made all her required payments due and owing on her mortgage loan subject to this action through her successful Chapter 13 plan and no one—including Ocwen—may allege otherwise.

Even after this action commenced and Ocwen was notified of Johnson's legal claims described in the Complaint (ECF. 2) and Amended Complaint (ECF. 13), Ocwen elects in its pending motion to double down upon its fictional, invalid default related to Johnson's mortgage loan. Before the commencement of this action Johnson also attempted in good faith and in reliance on Ocwen's false statements to notify it of its errors, but Ocwen effectively ignored and disregarded those communications. Johnson has also made (and continues to make) all payments legally due on her mortgage loan. In contrast, Ocwen continues to knowingly and recklessly misapply her full payments, disregard the true facts and its duties under Maryland law, threaten to foreclose upon Johnson and her home and property with no right to do so, and otherwise make false statements to her and others with the intent that those false statements should be believed and relied upon by Johnson and others just because it says so.

Faced with Ocwen's utter failure to live by and respect its own judicial statements, Johnson had no other choice to bring this action against it to assert her claims under the common law as well as remedial state and federal statutes governing Ocwen's relationship with Johnson. Johnson

has sustained damages and losses as a direct and proximate result of Ocwen's violations of state and federal law and she seeks a judicial determination that she is current on her mortgage loan and not in default so that the controversy improperly manufactured by Ocwen may end and she is permitted to live in peace without fear of Ocwen pursuing an illegal foreclosure.

## II. FACTUAL BACKGROUND

There are many interesting facts in this matter. However, for the purposes of this opposition and cross motion for partial summary judgment, the following general summary is what is necessary. Ms. Johnson may include additional facts elsewhere herein as to certain specific arguments advanced.

### E. The Johnsons' Chapter 13 Reorganization & Ocwen's Knowingly False and Deceptive Threats Post-Bankruptcy Confirmation

Johnson is one of the rare persons to successfully complete a confirmed, Chapter 13 plan.[2] Amended Complaint ("AC") at ¶ 42. She and her now deceased husband had filed for Chapter 13 bankruptcy protection on November 3, 2008. AC at ¶ 21. They presented a proposed plan[3] which was confirmed and approved by the United States Bankruptcy Court for the District of Maryland on January 29, 2009. AC at ¶ 21. The Johnsons' confirmed Chapter 13 plan included the single pre-petition mortgage payment due and owing to their mortgage servicer. AC at ¶ 24.

---

2 The national completion rate for Chapter 13 is only one-third of all persons who file Chapter 13. *See* Contributing Editors: Gordon Bermant (Burke, Virginia), Ed Flynn (Executive Office for U.S. Trustees), "Bankruptcy By the Numbers: A Small New Window on Chapter 13," available at [http://www.justice.gov/ust/bankruptcy-numbers-small-new-window-chapter-13#N_7_](http://www.justice.gov/ust/bankruptcy-numbers-small-new-window-chapter-13#N_7_).

3 The AC includes a misnomer in FN 4 & 5, Page 9 and identifies the proposed Amended Chapter Plan was presented to the Bankruptcy Court on January 15, 2015. The Amended Chapter Plan was actually presented on January 15, **2009** to the Bankruptcy Court.

The Johnsons made regular, on-time payments to their mortgage servicer outside the Chapter 13 plan after the commencement of the bankruptcy plan. AC at ¶ 23-24; Ex. 2 to the AC. From the Chapter 13 plan proceeds, the Chapter 13 trustee paid to the Johnsons' mortgage servicer the entire sum equal to the single pre-petition plan payment included in the Johnsons' confirmed Chapter 13 plan. AC at ¶ 24. The Johnsons also made all post-petition mortgage payments due and owing on their mortgage loan. AC at ¶ 23-24. At the conclusion of the Johnson's Chapter 13 plan, Ocwen certified to the Bankruptcy Court that Johnson had made all required payments under the confirmed Chapter 13 plan. AC at ¶ 29; Ex. 2 to the AC. In reliance on that certification, the Bankruptcy Court granted Johnson's Chapter 13 discharge. AC at ¶ 30.

In this action, Johnson seeks no damages or losses which accrued during her Bankruptcy Action. AC at ¶ 21. In fact, Johnson truthfully believed at the conclusion of her bankruptcy plan as did Ocwen and the Bankruptcy Court, that her mortgage payments were current and up-to-date. AC at ¶ 27, 29, 31. None of the issues presented and relevant in this action could have been asserted during Johnson's bankruptcy case since the issues accrued after that case was closed. AC at ¶ 3, FN3.

After seeking and receiving her bankruptcy discharge in reliance on Ocwen's certification to the Bankruptcy Court that she had made all mortgage payments required by her, Ocwen began to falsely claim that Johnson was delinquent on her mortgage obligation and demand certain invalid sums. AC at ¶¶ 31, 43, 44, 46-52, 59-63. In addition, it improperly threatened foreclosure and added junk fees to Johnson's mortgage account. AC at ¶ 31. Even after this action commenced Ocwen continued to wrongfully threaten Johnson with foreclosure even though she is current on her mortgage. AC at ¶ 63. Ocwen's claims of default were knowingly false in light of its

certification to the Bankruptcy Court and Johnson's on-time payments to Ocwen. AC at ¶ 41. Ocwen accepted Johnson's on-time post-bankruptcy payments and applied each as a regular payment. AC at ¶ 42.

F. Johnson's Notifications to Ocwen of Its Errors Were Ignored

In good faith Johnson requested Ocwen to correct its errors. AC at ¶ 44, 46, 55, 58. She called and spoke to Ocwen's authorized representatives on multiple occasions but Ocwen did not correct its records. AC at ¶ 44, 46, 55. She even wrote to Ocwen and notified it of its errors in writing. AC at ¶ 58. Johnson also wrote to the credit reporting agencies who also notified Ocwen of its errors. AC at ¶ 56.

In response to Johnsons' notification of errors, Ocwen owed Johnson certain duties of care. AC at ¶ 15-19. However, Ocwen did not fulfill its duties and conducted no reasonable investigation and simply continued to demand sums it was not entitled to demand. AC at ¶ 50, 57, 59. Ocwen has simply ignored its own prior certifications to the Bankruptcy Court and errors. AC at ¶ 55.

G. Ms. Johnson's Well Pled Damages and Losses

As a direct and proximate result of Ocwen's acts and omissions, Johnson has sustained damages and losses. AC at ¶ 64-65. These include economic, non-economic, and statutory damages. AC at ¶ 64-65, 84, 96, 112.

H. The Undisputed, Material Facts In Support of Johnson's Cross Motion for Partial Summary Judgment

- **Material Fact I:** The United States Bankruptcy Court for the District of Maryland confirmed the Johnsons' Chapter 13 plan on January 29, 2009 without objection of any party including

Ocwen's predecessor in interest. *See* Exhibit 1, Affidavit of Fannie Johnson at ¶ 2; Exhibit 2, *In re Johnson* Docket Entries.

- **Material Fact II:** Ocwen became the servicer of Johnson's mortgage loan on April 1, 2012. *See* Exhibit 1, Affidavit of Fannie Johnson at ¶ 3; Exhibit 3, Chase Servicing Transfer Letter to Johnson.
- **Material Fact III:** Neither Ocwen nor its predecessor in interest ever sought to amend its proof of claim in the Johnson bankruptcy action. Johnson's confirmed plan required her to make all post-petition payments due under the mortgage. Exhibit 1, Affidavit of Fannie Johnson at ¶¶ 4; Exhibit 4, Chase/Ocwen Proof of Claim and Summary of Claims History; Exhibit 5, Amended Chapter 13 Plan Approved by the Bankruptcy Court.
- **Material Fact No. IV:** On December 13, 2013, pursuant to Fed R. Bankr. Proc. 3002.1, Ocwen certified to the United States Bankruptcy Court for the District of Maryland that Johnson "ha[d] paid in full the amount required to cure the default on [Ocwen's] claim" in the Johnson bankruptcy case related to her pre-petition default payment and owed no pre-petition sums. Ex. 2 to the AC (ECF. 13-2 (at page 2 of 6)).[4]
- **Material Fact No. V:** On December 13, 2013, pursuant to Fed R. Bankr. Proc. 3002.1, Ocwen certified to the United States Bankruptcy Court for the District of Maryland that Johnson "[was] current with respect to all payments with §1322(b)(5) of the Bankruptcy Code" in the

4 Since Johnson has supplied the Court with the publicly available information to support this adjudicative fact which cannot be disputed, the Court "must take judicial notice if a party requests it." Fed. R. Evid. 201(c)(2). Johnson requests the Court to take judicial notice of this fact from the court records of the Bankruptcy Court pursuant to Fed. R. Evid. 201(c)(2). *Lolavar v. de Santibanes*, 430 F.3d 221, 225 at FN 2 (4th Cir. 2005)(approving judicial notice of court records).

Johnson bankruptcy case related to her post-petition default payments and owed no post-petition default sums. Ex. 2 to the AC (ECF. 13-2 (at page 2 of 6)).[5]

- **Material Fact No. VI**: In reliance on Ocwen's representations to the Bankruptcy Court identified in Material Facts IV and V, Johnson sought and obtained a Chapter 13 discharge from the Bankruptcy Court and the case was closed. *See* Exhibit 1, Affidavit of Fannie Johnson at ¶ 5; Exhibit 2, *In re Johnson* Docket Entries.
- **Material Fact No**. **VII**: Ocwen also never filed a notice pursuant to Rule 3002.1(c) in the Bankruptcy Court that Johnson owed any fees, expenses, or charges, such as late fees on her mortgage but it has wrongfully demanded such sums from Johnson after the conclusion of the Bankruptcy case.. *See* Exhibit 1, Affidavit of Fannie Johnson at ¶¶ 6, 8; Exhibit 2, *In re Johnson* Docket Entries.

## III. STANDARD OF REVIEW

### A. MOTION TO DISMISS

#### *1. Fed.R.Civ.P. 12(b)(6) Motion to Dismiss*

The Fourth Circuit has explained, "[t]o survive a Rule 12(b)(6) motion to dismiss, the facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. American Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

---

5 Since Johnson has supplied the Court with the publicly available information to support this adjudicative fact which cannot be disputed, the Court "must take judicial notice if a party requests it." Fed. R. Evid. 201(c)(2). Johnson requests the Court to take judicial notice of this fact pursuant to Fed. R. Evid. 201(c)(2).

544 (2007)). In *Twombly* the Court considered whether the plaintiff stated "enough facts to state a claim to relief that is plausible on its face," *Twombly, 550 U.S.* at 570, observing that "plaintiff's obligation to provide grounds for his entitlement to relief requires more than labels and conclusions, and formalistic recitation of the elements of a cause of action will not do." *Id.* at 545. However, "[o]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*,127 S. Ct. 1955, 1969 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A court must also view the factual allegations of the complaint "in the light most favorable to plaintiff." *Battlefield Builders, Inc. v. Swango*, 743 F.2d 1060, 1062 (4th Cir.1984). But the court is not necessarily bound by the legal conclusions drawn. *Dist. 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085-86 (4th Cir. 1979).

***2. Fed.R.Civ.P. (8) & 9(b) Pleading Requirements***

Pleadings are generally required to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P.8(a)(2). In addition each allegation must be "simple, concise and direct." *Id.* at 8(d)(1).

> The purpose of a motion to dismiss is to test the sufficiency of the complaint...A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."... That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion [s] devoid of further factual enhancement."

*Hart v. Lew*, 973 F.Supp.2d 561, 571 (D. Md. 2013) (internal citations omitted).

However, when asserting claims based in fraud or mistake, “a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.” Fed.R.Civ.P. 9(b). Conversely, statutory consumer protection claims, based on nonfraudulent but unfair or deceptive conduct, are not necessary required to be pled with particularity. Judge Titus explained the limits of the requirement to plead with particularity in the context of remedial, consumer protection statutes [similar to those in this matter] as follows:

> [Defendants] are simply mistaken that Rule 9(b)'s requirement of particularity applies to the other elements of the [*Racketeer Influenced and Corrupt Organizations* Act] claims (e.g. existence of a conspiracy) *in addition to* the predicate acts of mail and/or wire fraud. *Williams*, 498 F.Supp.2d at 842. For the remaining RICO elements and *the remaining non-RICO claims, Plaintiffs' allegations are construed under the more liberal pleading standard of a “short and plain statement of the claim showing that the pleader is entitled to relief.”* Fed.R.Civ.P. 8(a)(2); *see also Baltimore County v. Cigna Healthcare*, 238 Fed.Appx. 914, 921 (4th Cir.2007) (holding that the “notice pleading” standard of Fed.R.Civ.P. 8 applies to allegations of non-fraudulent conduct and thus plaintiff's claim of negligent misrepresentation did not need to be pleaded with particularity under Fed.R.Civ.P. 9(b)). Because the remaining claims in Plaintiffs' complaint do not allege fraudulent conduct (rather, they consist of the other elements of the RICO claims in addition to claims under [Real Estate Settlement Procedures Act], [Protection of Homeowners in Foreclosure Act], and a gross negligence claim), the lower pleading standard applies.

*Proctor v. Metropolitan Money Store Corp.*, 645 F.Supp.2d 464, 476 (D.Md.,2009) (emphasis added).

Finally, Rule 9(b)’s strict requirements do not apply to claims relating to fraudulent concealment and omission claims. *Akinkoye v. Wells Fargo Home Mortg.*, CIV.A. DKC 11-2336, 2011 WL 6180210 (D. Md. Dec. 12, 2011)(“In cases involving concealment or omissions of material facts, however, meeting Rule 9(b)'s particularity requirement will likely take a different

form. *See Shaw v. Brown & Williamson Tobacco Corp.,* 973 F.Supp. 539, 552 (D.Md.1997)"). *Flynn v. Everything Yogurt*, CIV. A. HAR92-3421, 1993 WL 454355 (D. Md. Sept. 14, 1993) ("the more stringent requirements of Rule 9(b) do not apply to omissions").

**B. MOTION FOR SUMMARY JUDGMENT& JUDICIAL ESTOPPEL**

The Fourth Circuit recently explained

> Summary judgment is appropriate only when the evidence shows that "there is no genuine issue as to any material fact," Fed.R.Civ.P. 56(c), such that "a reasonable jury could [not] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "In addition to construing the evidence in the light most favorable to [the Does], the non-movant, we also draw all reasonable inferences in [their] favor." *World Fuel Servs. Trading, DMCC v. Hebei Prince Shipping Co., Ltd.,* 783 F.3d 507, 512 (4th Cir.2015).

*Doe v. Rosa*, 795 F.3d 429, 436 (4th Cir. 2015).

The Fourth Circuit has also described

> Judicial estoppel [as] a principle developed to prevent a party from taking a position in a judicial proceeding that is inconsistent with a stance previously taken in court. *See John S. Clark Co. v. Faggert & Frieden, P.C.,* 65 F.3d 26, 28 (4th Cir.1995). Three elements must be satisfied before judicial estoppel will be applied. "First, the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation." *Lowery v. Stovall,* 92 F.3d 219, 224 (4th Cir.1996). The position at issue must be one of fact as opposed to one of law or legal theory. *Id.* "Second, the prior inconsistent position must have been accepted by the court." *Id.* Lastly, the party against whom judicial estoppel is to be applied must have "intentionally misled the court to gain unfair advantage." *Tenneco Chems., Inc. v. William T. Burnett & Co.,* 691 F.2d 658, 665 (4th Cir.1982). This bad faith requirement is the "determinative factor." *John S. Clark Co.,* 65 F.3d at 29.

*Zinkand v. Brown,* 478 F.3d 634, 638 (4th Cir. 2007). *See also Lowery v. Stovall*, 92 F.3d 219, 223 (4th Cir. 1996)('The purpose of the doctrine is to prevent a party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process.' *John S. Clark Co. v. Faggert & Frieden, P.C.,* 65 F.3d 26, 28–29 (4th Cir.1995) (citations and internal quotation marks

omitted). *See also* Mark J. Plumer, Note, *Judicial Estoppel: The Refurbishing of a Judicial Shield*, 55 Geo. Wash. L.Rev. 409, 435 (1987) ('Judicial estoppel is properly defined as a bar against the alteration of a factual assertion that is inconsistent with a position sworn to and benefitted from in an earlier proceeding.')").

## IV. ARGUMENT

### A. Under Principles of Res Judicata, Johnson is Entitled to the Entry of Partial Summary Judgment in the form of a Declaration of Law that Ocwen is Not Entitled to Claim Now or Otherwise that Johnson Failed to Make All the Required Payments in her Successful Chapter 13 Bankruptcy

Pursuant to Count IV of her Amended Complaint, and MD. CODE ANN., CTS. & JUD PROC. §§ 3-409 and 28 U.S.C.A. § 2201, Johnson requests the Court to declare the rights of the Parties related to the status of her mortgage at the conclusion of her Chapter 13 Bankruptcy Plan and discharge from the United States Bankruptcy Court for the District of Maryland. As evidenced by Ocwen's own argument before the Court,[6] it wishes to have this Court do something that it cannot do—i.e. provide it a legal justification for it to assert that Johnson owed sums which it previously certified to the Bankruptcy Court were not due and owing. *See* **Material Facts IV & V**.

Specifically, Johnson asks the Court to grant partial summary judgment on her declaratory claim in Count IV of her Amended Complaint, and to declare:

Plaintiff Fannie Johnson was current on her personal mortgage obligation as of

6 *See* Mem. in Sup. of MTD AC at Page 18 ("Ocwen agrees that its 'certification and representations to the Bankruptcy Court on December 13, 2013' that Plaintiff was current on her Loan were 'truthful'…Thus, on December 13, 2013, Plaintiff was not yet delinquent on her Loan because she still had two more days in which to make her December 1, 2013 payment"). Ocwen makes this certification even though the well pled facts of the AC demonstrate that Johnson had made and Ocwen and its predecessor had received all payments which were due on her loan. AC at ¶¶ 23-24. More to the point Ocwen's theory to this Court cannot be reconciled with its certifications to the Bankruptcy Court.

> December 13, 2013 as certified by Ocwen Loan Servicing, LLC (loan number ending in 9984) to the United States Bankruptcy Court for the District of Maryland and no party may legally claim directly or indirectly any other contention about the status of the loan as of that date.

This declaration at an early stage of the proceedings, which cannot be disputed as a matter of law, will focus the Parties and the Court throughout the remaining proceedings.

In light of Johnson's request for declaratory relief regarding the status of her mortgage on the date of Ocwen's certification to the bankruptcy court, a brief discussion of the purpose and mechanics of a Chapter 13 bankruptcy case is appropriate. In a Chapter 13 bankruptcy case, the debtor proposes a plan for approval, or "confirmation," by the Bankruptcy Court. *See* 11 U.S.C. §§ 1322 and 1325. A plan will not be confirmed unless it meets certain requirements, set forth in § 1325. In the case of a homeowner who is behind on her mortgage at the time she files the "petition" to commence her case, the plan may provide for the curing of the mortgage default over the course of the plan (usually three years or five years in duration) and maintenance of post-petition mortgage payments to the mortgage servicer. 11 U.S.C. § 1322(b)(5) ("[the plan may] provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due"). The trustee collects plan payments from the debtor and distributes them monthly to creditors after plan confirmation.

If a creditor wishes to be paid through the plan, it must file a "proof of claim" by a certain deadline. *See* Fed. Rules Bankr. Proc. 3001 and 3002. The proof of claim must include, in addition to the principal amount, an itemized statement of interest, fees, expenses, and other charges incurred before the petition was filed and a statement of the amount necessary to cure any default of the date of the petition. Fed. Rule Bankr. Proc. 3001(c)(2)(A). When a claim is secured by a

security interest in the debtor's principal residence and "provided for under § 1322(b)(5) of the Code in the debtor's plan," as when a debtor-homeowner proposes to cure a mortgage default and maintain ongoing mortgage payments, as Johnson did in her Chapter 13 plan, the creditor has additional obligations pursuant to Rule 3002.1, including filing and serving on the debtor, debtor's counsel, and the trustee "a notice itemizing all fees, expenses, or charges (1) that were incurred in connection with the claim after the bankruptcy case was filed, and (2) that the holder asserts are recoverable against the debtor or against the debtor's principal residence." Fed. Rule Bankr. Proc. 3002.1(c). Such notice must be filed within 180 days after the date on which the fees, expenses, or charges were incurred. *Id*. The notice is a "supplement to the holder's proof of claim." Fed. Rule Bankr. Proc. 3002.1(d). Towards the end of the bankruptcy case, after the debtor completes all plan payments and the trustee serves a notice on the creditor that the debtor has cured her default, the creditor must file and serve on the debtor, debtor's counsel, and the trustee a sworn statement indicating "(1) whether it agrees that the debtor has paid in full the amount required to cure the default on the claim, and (2) whether the debtor is otherwise current on all payments consistent with § 1322(b)(5) of the Code." Fed. Rule Bankr. Proc. 3002.1(g). This statement is a supplement to the creditor's proof of claim. *Id*.

To have obtained a Chapter 13 discharge, Ms. Johnson was required to complete all payments due under the plan. 11 U.S.C. § 1328. Johnson's confirmed plan required her to make all post-petition payments due on the mortgage. **Material Fact III**. Johnson's performance of this latter payment requirement under her plan was confirmed by the Defendant. **Material Facts I, III.** Ms. Johnson was only able to obtain the final discharge order because she complied with the plan. The determination that all payments provided for by the plan were made was also a fact

necessary for the Bankruptcy Court to decide in granting the discharge order. Any contention inconsistent with this determination, including Ocwen's post-bankruptcy contentions to Ms. Johnson, with this determination is an impermissible collateral attack on the discharge order. Discharge orders are not subject to collateral attacks. *See AEC One Stop Grp., Inc. v. Bain Capital Fund IV L.P.*, 9 F. App'x 53, 55 (2d Cir. 2001); *In re Lohr*, 377 B.R. 364, 370 (Bkrtcy.M.D.Fla.,2006). The review of a discharge order is subject to the same procedures and limitations as any other final order since the provisions of Federal Rules of Civil Procedure 59 and 60 are made applicable to bankruptcy proceedings. *Id.*

The Bankruptcy Code also states that "[t]he provisions of a confirmed plan bind the debtor **and each creditor**, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a)(emphasis added). No party in interest who was properly noticed in the bankruptcy case may collaterally attack the plan provisions after plan confirmation. *Covert v. LVNV Funding LLC*, 779 F. 3d 242, 247 (4th Cir. 2015).[7]

In the context of examining the *res judicata* effect of an earlier bankruptcy on a debtor's post-bankruptcy consumer protection claims, the Fourth Circuit explained:

> "Under *res judicata* principles, a prior judgment between the same parties can preclude subsequent litigation on those matters actually and necessarily resolved in the first adjudication." As we have applied it, the doctrine of res judicata encompasses two concepts: claim preclusion, which bars later litigation of all claims that were actually adjudicated or that could have been adjudicated in an earlier action, and issue preclusion, which bars later litigation of legal and factual issues that were "actually and necessarily determined" in an earlier action. Rather than attempting to draw a sharp distinction between these two aspects here, we

7 A plan may be modified after confirmation but before the completion of payments due under such plan, and the modified plan will become "the plan" unless, after notice and a hearing, such modification is disapproved. 11 U.S.C. § 1329.

> conduct our analysis under the general res judicata framework, as has been our practice in bankruptcy cases. We have held that a prior bankruptcy judgment has res judicata effect on future litigation when the following three conditions are met: 1) [T]he prior judgment was final and on the merits, and rendered by a court of competent jurisdiction in accordance with the requirements of due process; 2) the parties are identical, or in privity, in the two actions; and 3) the claims in the second matter are based upon the same cause of action involved in the earlier proceeding.

*Covert*, 779 F.3d at 246 (citations omitted).

As a matter of law, Ocwen may not claim to Johnson or this Court that she failed to pay sums due and owing on her mortgage that accrued on or before December 13, 2013 or confirmation of her Chapter 13 plan because all three res judicata requirements are met here, as they were in *Covert*. First, a confirmation order is a final judgment. 11 U.S.C.A. § 1327(a)("The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan"); *Covert*, 779 F.3d at 246. In her prior bankruptcy action, no one objected to Johnson's proposed plan and the plan was confirmed. **Material Fact I**. The discharge order was also a final judgment. *See Maryland, Comptroller of Maryland v. Ciotti*, 421 BR 202, 205 (D.Md. 2009).

The second res judicata requirement is satisfied because both Johnson and the Defendant were parties to the earlier Chapter 13 case. Although Ocwen did not take over the servicing of Johnson's loan until after the confirmation proceedings, Ocwen is a successor-in-interest to Chase, who did participate in the confirmation proceedings, and Ocwen is therefore in privity with Chase. Further, Ocwen participated in the Chapter 13 case and never sought to amend the proof of claim filed in the Bankruptcy Court to revise the amount of pre-petition arrears. *See* **Material Fact III.**[8]

8 Ms. Johnson's successful completion of her plan, in conjunction with the trustee's Notice of

Ocwen in fact later ratified the proof of claim by filing and serving its response to the trustee's final notice of cure payment (Ex. 2 to the AC), which stated that the pre-petition arrears had been cured.

The Fourth Circuit has held that, in the bankruptcy context, when a party later asserts claims that directly contradict the bankruptcy court's plan confirmation order or even assert rights that are inconsistent with the confirmation order, the third res judicata requirement is satisfied. *Covert*, 779 F.3d at 247.  As the court explained a "bankruptcy court's plan confirmation order approv[es] th[e] proofs of claim as legitimate." *Id*. at 247.  Further, proofs of claim are not subject to post-confirmation challenge.  *Id*. at 248 ("[w]ere we to hold that proofs of claim are subject to post-confirmation challenge, we would risk undermining [one of the core purposes of bankruptcy]).  *See also In re Elstien*, 238 B.R. 747, 754 (Bankr. N.D. Ill. 1999)(applying res judicata against the IRS after a plan was confirmed).

The third res judicata requirement is met as well. In its Response to the Trustee's Notice of Final Cure, Ocwen certified to the Bankruptcy Court that Johnson had paid throughout her bankruptcy plan all sums which were due on her mortgage.  *See* **Material Facts IV & V**.  This certification under penalty of perjury served as a supplement to its proof of claim and included the additional, important information – not included in the original proof of claim – that Johnson maintained all post-petition mortgage payments in compliance with her plan provision pursuant to § 1322(b)(5). Ocwen also never filed a notice pursuant to Rule 3002.1(c) alleging that Johnson owed any fees, expenses, or charges, such as late fees on her mortgage.  **Material Fact VII.**

---

Final Cure Payment and Ocwen's response to the Notice of Final Cure Payment, allowed for the Court's discharged order which was also a final judgment.

Ocwen cannot assert a right to payment of a sum not asserted in its proof of claim or supplement to proof of claim (December 13, 2013 sworn statement) because such a claim would be inconsistent with, if not directly contradictory of, the Bankruptcy Court's confirmation order, which approves the proofs of claim and all plan provisions, including Johnson's provision of curing the mortgage default *and maintaining post-petition mortgage payments*.

B. Alternatively, Johnson is Entitled to the Entry of Partial Summary Judgment in the form of a Declaration of Law that Ocwen is Not Entitled Claim Now or Otherwise that Johnson Failed to Make All the Required Payments in her Successful Chapter 13 Bankruptcy on the Basis of Estoppel

Also, as a matter of judicial estoppel and equitable estoppel, Ocwen is not permitted to claim facts contrary to its own, undisputed certifications (**Material Facts IV & V**) to the Bankruptcy Court. *Zinkand*, 478 F.3d at 638; *Chawla v. Transamerica Occidental Life Ins. Co.*, 440 F.3d 639, 646 (4th Cir. 2006)("Under Maryland law, '[e]quitable estoppel is comprised of three basic elements: (1) a voluntary misrepresentation of one party, (2) that is relied on by the other party, (3) to the other party's detriment.' *Reichs Ford Road Joint Venture v. State Roads Comm'n of the State Highway Admin.*, 388 Md. 500, 880 A.2d 307, 321 (2005) (citation omitted)").

In this instance all three elements of equitable estoppel cannot be disputed by Ocwen in light of the undisputed facts before the Court. Ocwen previously made a voluntary representation to the Bankruptcy Court that Ms. Johnson had cured her pre-petition arrears and made all her post-petition payments on her Chapter 13 Bankruptcy Plan. **Material Facts IV & V**. Johnson and the Bankruptcy Court relied upon those representations. **Material Fact VI**. However, after the bankruptcy case was closed and completed Ocwen has asserted contrary claims and made threats of foreclosure. **Material Fact VII.** Therefore, as a matter of law, Johnson is entitled to partial

summary judgment in a form of the declaration sought herein since Ocwen is equitably estopped from making any contrary assertions to this Court or any other person than what it previously represented to the Bankruptcy Court. *Zinkand*, 478 F.3d at 638.

In addition, as a matter of judicial estoppel, Johnson is also entitled to the limited declaratory relief sought.

> The Fourth Circuit has noted, "[j]udicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation. The purpose of the doctrine is to prevent a party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process." *Lowery v. Stovall,* 92 F.3d 219, 223 (4th Cir.1996) (*quoting John S. Clark Co. v. Faggert & Frieden, P.C.,* 65 F.3d 26, 28-29 (4th Cir.1995)).

*Dorsey v. Ruth*, 222 F. Supp. 2d 753, 755 (D. Md. 2002). *Compare Mohsenzadeh v. JPMorgan Chase Bank*, *N.A.*, No. 14CV2340 BTM-DHB, 2015 WL 1346130, at *5 (S.D. Cal. Mar. 25, 2015)("Because he failed to disclose these potential claims as an asset on his Chapter 7 bankruptcy schedules, or otherwise disclose them to the Bankruptcy Court, Plaintiff is judicially estopped from bringing this action. *See Hay v. First Interstate Bank of Kalispell, N.A.*, 978 F.2d 555, 557 (9th Cir.1992)").

Ocwen would have this Court and Johnson believe that after a bankruptcy plan is confirmed and a Chapter 13 bankruptcy is successfully completed and Ocwen has certified to the Bankruptcy Court that all required payments were made, that may unilaterally declare sums included in the Chapter 13 Bankruptcy Plan has unpaid. It is exactly this type of 'fast and loose' argument that requires the Court to reject Ocwen's core argument; to suggest otherwise would be to permit Ocwen to impermissibly disregard the judicial process. *Id. Compare also Brown v. Mayor*, 167 Md. App. 306, 325, 892 A.2d 1173, 1184 (2006)("the appellants are judicially estopped from arguing that Price acted in self-defense because Price admitted in his guilty plea in the criminal

case that he committed first-degree murder"); *Reynolds v. C.I.R.,* 861 F.2d 469, 470 (6th Cir. 1988)("under the unusual facts presented here the doctrine of judicial estoppel does apply, and it precludes the Commissioner from repudiating the position on which the court-approved stipulation was based").

Here, Ocwen made certain certifications to the Bankruptcy Court (**Material Fact IV & V**) which it should not be permitted to deny in this action or otherwise disregard. For these additional reasons, Johnson is entitled to the partial declaratory relief sought herein and to deny Ocwen's primary basis for its motion to dismiss which is premised on a theory entirely inconsistent with its prior judicial statements. To suggest otherwise would be to sanction its 'fast and loose' arguments to this and other courts.

C. Assuming *Arguendo*, the Court Disregards Ocwen's Prior Judicial Statements Described in §§ i & ii, *supra*, The Claims Presented in this Action Were Not Litigated in the Prior Bankruptcy Proceeding Since They Arose Post-Confirmation and Otherwise Did Not Accrue Until After the Conclusion of the Bankruptcy Action

In her AC, Johnson makes clear that the claims before the Court accrued after the conclusion of her prior bankruptcy action.

> While certain background facts described herein occurred more than three years before the commencement of this action, Johnson includes these facts solely for the purpose of providing background and context to the actual claims asserted in this Amended Complaint. **None of the claims asserted herein could have accrued and even been pursued by Johnson in her prior bankruptcy action, since Johnson had no reason to know that Ocwen's certification and judicial statements to the United States Bankruptcy Court for the District of Maryland were untrue or otherwise incorrect. Rather, the claims before this Court accrued within the three years before the commencement of this action, after the confirmation of Johnson's Chapter 13 Plan, and after she successfully completed her Chapter 13 plan and received a discharge**.

AC at Page 3, FN 3 (emphasis added). *See also* AC at ¶ 31 ("Despite Mrs. Johnson's timely

payments of all amounts due under her Loan, the bankruptcy trustee's cure of the delinquency for the November 1, 2008 payment, and Ocwen's express acknowledgement that Mrs. Johnson was current on her loan as referenced in ¶ 27 (to which Mrs. Johnson reasonably relied upon as demonstrated by her request for a discharge), Ocwen **thereafter** (as described in ¶¶ 43-44, 46-51, 59-63 *infra*) began falsely asserting that Mrs. Johnson was delinquent on her mortgage and has continued these false assertions up to the filing of this Amended Complaint")(emphasis added); AC at ¶ 54 ("Ocwen only disclosed and manufactured the alleged past-due sums owed by Mrs. Johnson: (i) after it certified to the Bankruptcy Court that she was current; (ii) after Mrs. Johnson received her Chapter 13 Bankruptcy Certification; and (iii) less than three years before the commencement of this action. Ocwen only began claiming past-due sums from Mrs. Johnson (which were not actually owed) in its Mortgage Account Statements sent to her beginning on October 17, 2014, November 13, 2014, December 3, 2014, and continuing thereafter")(emphasis in original).

While Ocwen may wish to dispute the well pled facts of the AC, such disputes are not proper for the Court to resolve at the motions to dismiss stage of these proceedings. Judge Hollander has explained:

> Generally, disputes of fact "cannot be decided on a motion to dismiss pursuant to Rule 12(b)(6)," *Andrew v. Clark*, 561 F.3d 261, 267 (4th Cir.2009), because the court must construe the well-pled facts "in the light most favorable to the nonmoving party ." *Kendall*, 650 F.3d 515, 522 (4th Cir.2011). Put another way, a motion pursuant to Rule 12(b)(6) typically "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir.1999) (internal quotation marks omitted).

*Petty v. Sampong*, No. CIV.A. ELH-14-1779, 2014 WL 4662397, at *3 (D. Md. Sept. 16, 2014).

Put another way, Ocwen's strawman argument would have this Court hold that (i) Johnson was required to anticipate during her bankruptcy action (before her plan was even confirmed) and

(ii) before she received a Chapter 13 discharge based upon Ocwen's own certified statements (under the penalties of perjury) that she had made all required payments, that at some time in the future Ocwen was going to reverse course and declare on its own that she had in fact not made all the payments required. This argument is simply without justification. *Compare Meekins v. United Transp. Union*, 946 F.2d 1054, 1058 (4th Cir. 1991)("The claim would have been wholly speculative, and thus unavailable, because plaintiffs could not have known that UTU would ignore the district court's finding that its conduct was illegal. Thus, under this circuit's objective test, res judicata does not bar plaintiffs' claim").

D. Since Certain of Her Claims Accrued After the Conclusion of Ms. Johnson's Bankruptcy, The Doctrine of *Res Judicata* Does Not Apply to The Claims She Has Presented to the Court (But Does Apply to Ocwen's Argument Advanced in this Action)[9]

The Fourth Circuit has explained

> res judicata does not bar claims that did not exist at the time of the prior litigation. *See Harnett,* 800 F.2d at 1313. The standard is objective, and "it is the existence of the present claim, not party awareness of it, that controls." *Id*....
>
> This circuit has adopted a transactional approach to the identity of claims question drawn from § 24(b) of the Restatement (Second) of Judgments. *See Keith*, 900 F.2d at 740. Under the Restatement (Second) standard "the appropriate inquiry is whether the new claim arises out of the same transaction or series of transactions as the claim resolved by the prior judgment." *Harnett* at 1313. Applying that standard, we hold that plaintiffs' claim arises out of a different transaction than that resolved by the judgment in the first suit and affirm the district court's ruling in favor of plaintiffs.

---

9 § 4405Raising and Enforcing Res Judicata, 18 Fed. Prac. & Proc. Juris. § 4405 (2d ed.)("The plaintiff should be able to assert preclusion as to other matters pleaded by a defendant by request to file a reply, a motion to strike a defense that shows preclusion on its face, or a motion for summary judgment. Since there is no general obligation of reply, however, failure to resort to these procedures should not waive the right to insist on preclusion").

> Plaintiffs' claim arises from UTU's refusal on April 11 to begin providing them with the additional payments after the district court had ruled in the first suit that failure to do so was a breach of the union's duty of fair representation. Thus, the claim arises from events separate from those at issue in the first suit. "[R]es judicata has very little applicability to a fact situation involving a continuing series of acts, for generally each act gives rise to new cause of action." *Crowe v. Leeke,* 550 F.2d 184, 187 (4th Cir.1977) (decided prior to adoption of Restatement (Second) standard).

*Meekins,* 946 F.2d at 1058. *See also Harvey v. Marshall*, 389 Md. 243, 258, 884 A.2d 1171, 1179 (2005)("We conclude that the doctrine of *res judicata* does not bar the present case because Harvey's motion seeking to establish custody of his children did not present the same claim or cause of action as the present case").

Since Johnson could not have brought the actual claims presented in her AC in her bankruptcy action because they accrued after the conclusion of her bankruptcy case (AC at ¶ 3, FN 3 and AC at ¶¶ 27, 31, 54), she is permitted to proceed on these claims in this action. *Almy v. Sebelius*, No. RDB-09-0255, 2014 WL 910197, at *6 (D. Md. Mar. 7, 2014)(Res Judicata does not apply where plaintiff "now seeks coverage for different beneficiaries at different time periods than those decided in [the first action], [since] those claims are a different series of transactions"); *In re Chesapeake Contractors, Inc*., 413 B.R. 254, 259 (Bankr. D. Md. 2008)(res judicata does not apply to "subsequently occurring transactional facts").

E. Ms. Johnson Does Not Assert Any Claims Which Accrued Before Three Years Before the Commencement of This Action; However Any Factual Allegations Related to Acts and Omissions More Than Three Years Before the Commencement of this Action Are Relevant and Material to the Actual Claims Asserted by Plaintiff

Ocwen asks the Court to dismiss claims not even before the Court and accrued before the three years before the commencement of this action. While Johnson has provided in her AC certain facts which occurred before the three years before this action, those facts are presented for context

to the actual claims before the Court which accrued after the conclusion of Johnson's bankruptcy. AC at ¶ 3, FN 3 and AC at ¶¶ 27, 31, 54. For this reason Ocwen's argument should simply be disregarded as it would require the Court assume claims not even before the Court.

F. Ms. Johnson Has Stated Proper Claims Under the MCPA and MCDCA

Ocwen claims "Plaintiff's Complaint nonetheless fails to state a claim upon which relief can be granted" under the Maryland Consumer Protection Act and Maryland Consumer Debt Collection Act. Mem. in Sup. of MTD AC at Page 13. In support of this general argument, Ocwen advances the following themes: (i) Ocwen disputes Johnson's well pled facts and wishes for the Court to accept its disputed view;[10] (ii) Ocwen claims that it is entitled to make statements of commercial puffery to Ms. Johnson to which cannot constitute "material misrepresentation[s] as a matter of law under the MCPA;[11] (iii) Ocwen claims Johnson has failed to adequately plead reliance by Johnson;[12] (iv) Ocwen claims Johnson has not "alleged any damages under the

10 Ocwen claims, for example, that none of Johnson's claims are 'material' and "[b]ecasue Plaintiff was, in fact, delinquent on her Loan, Ocwen's communications, necessarily, are not false or deceptive." Mem. in Sup. of MTD AC at Page 14. Granting Ocwen's motion to dismiss based solely upon a version of facts presented by Ocwen and its counsel in its motion papers would be reversible error. *Dolgaleva v. Virginia Beach City Pub. Sch.*, 364 F. App'x 820, 825 (4th Cir. 2010)("The Fourth Circuit has explained that a "district court may go beyond these documents, which constitute 'the pleadings,' in a Rule 12(b)(6) proceeding if it converts the proceeding to one for summary judgment. Fed.R.Civ.P. 12(d). Statements of counsel at a Rule 12(b)(6) hearing that raise new facts constitute matter beyond the pleadings. *Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*,187 F.3d 941, 948 (8th Cir.1999))." Unless the Court provides notice to Johnson that it intends to consider Ocwen's version of the facts presented by its counsel which are not supported by the well pled AC and convert its motion to one for summary judgment, Johnson will not respond to them in this opposition and reserve her response when provided such notice. Fed. R. Civ. P. 12(d).

11 Mem. in Sup. of MTD AC at Page 15-17.

12 Mem. in Sup. of MTD AC at Page 17-19.

MCPA";[13] and (v) Despite its concession and prior certification to the Bankruptcy Court that Johnson made all her pre-petition and post-petition mortgage payments, Ocwen claims Johnson has failed to pled her MCDCA claims because she never pled that she made a 'cure' payment and she never pled that Ocwen knew its claims for sums not due were improper.[14]

Clearly, Ocwen wishes to dispute the well pled facts of Johnson's AC. However, viewing those detailed and specific facts actually pled in the AC in a light most favorable to Johnson, Ocwen's overbroad argument and view of facts not presently before the Court is not sufficient to dismiss Johnson's well pled MCPA and MCDCA claims pursuant to Fed. R. Civ. P. 12(b)(6).

### *i. Maryland Consumer Protection Act.*

> The Maryland Consumer Protection Act prohibits "unfair or deceptive trade practices," and lists fourteen categories of proscribed conduct. Md.Code Ann., Com. Law § 13-301. Specifically**, the MCPA prohibits both the use of false or misleading statements, and also the omission of material facts**. *Id.* Under the MCPA, "an individual may only bring a claim if she can 'establish the nature of the actual injury of loss that he or she allegedly sustained as a result of the prohibited practice.'" *Allen v. CitiMortgage, Inc.,* No. CCB 10-2740, 2011 WL 3425665, at *10 (D.Md. Aug. 4, 2011) (quoting *Lloyd v. General Motors Corp.,* 397 Md. 108, 916 A.2d 257, 280 (2007)).

*Marshall v. James B. Nutter & Co.*, 816 F. Supp. 2d 259, 266 (D. Md. 2011)(emphasis added).

The Maryland Consumer Protection requires the disclosure of material facts in connection with any consumer transaction and defines any unfair or deceptive trade practices to include the "[f]ailure to state a material fact if the failure deceives or tends to deceive." MD. CODE ANN., COM. LAW §13-301(3). This statement imposes a duty on any person involved in a consumer transaction to disclose material facts. Further, consistent with the legislature's stated purpose of the MCPA,

---

13 Mem. in Sup. of MTD AC at Page 19-20.

14 Mem. in Sup. of MTD AC at Page 20-21.

its requirements, including those stated in §13-301(3), "shall be construed and applied liberally to promote its purpose." MD. CODE ANN., COM. LAW §13-105.

> The gravamen of an 'unfair or deceptive trade practice' under the Consumer Protection Act is whether the false or misleading statements or representations have 'the capacity, tendency, or effect of deceiving or misleading consumers.' Section 13-301(1) of the Consumer Protection Act. Thus, the issue is whether the [omissions, misstatements, or misrepresentations] were misleading or had the capacity, tendency, or effect of misleading or deceiving.

*MRA Prop. Mgmt., Inc. v. Armstrong*, 426 Md. 83, 110-11, 43 A.3d 397, 413 (2012).

Allegations similar to those raised by Johnson have previously been found sufficient to state a claim under the MCPA. For example, in *Ademiluyi v. PennyMac Mortgage Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502 (D. Md. 2013) the court explained:

> The Complaint indicates that plaintiff "reasonably relied" on alleged misrepresentations or omissions by defendants that they could lawfully pursue foreclosure and collection activities in the State, *see* Compl. ¶¶ 50, 83, thereby suffering damages in the form of "sums collected directly and indirectly by PennyMac to which it had no legal right to collect." Opp. at 37 (citing Compl. ¶ 49). Further, plaintiff avers that, in reliance on PennyMac Holdings' seemingly lawful conduct, she incurred expenses in the form of attorney's fees to contest its collection efforts, and suffered emotional distress as a direct result of the collection activities. *See* Compl. ¶ 49. Put another way, plaintiff claims that, if PennyMac Holdings had disclosed that it lacked a State of Maryland collection agency license, and was not in compliance with Maryland collection laws, she would not have suffered such harm.
>
> In my view, plaintiff has adequately stated a claim for mortgage fraud under Rule 9(b). The Complaint's factual allegations are sufficient to provide notice to defendants of the basis of plaintiff's claims. *Cf. Piotrowski*, 2013 WL 247549 at *12–14 ("[T]he substance of the alleged omissions is clear: despite repeatedly communicating with Mr. Piotrowski, Wells Fargo failed to disclose that it was not actually considering Mr. Piotrowski's requests but had instead summarily ignored them. This is sufficient to meet the relaxed Rule 9(b) standard as it provides Wells Fargo with notice for the basis of Mr. Piotrowski's [MCPA] claim" and "an MMFPA claim based on the same conduct").

*Id. at* 533-34 (D. Md. 2013)(citing and quoting from *Piotrowski v. Wells Fargo Bank, N.A.*, CIV.A.

DKC 11-3758, 2013 WL 247549 (D. Md. Jan. 22, 2013)). *See also Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 797-98 (finding at the motions to dismiss stage sufficiently pled reliance based upon (i) payments made to the mortgage servicer in relation to unfair and deceptive practices at issue and (ii) assurances of mortgage servicer to borrowers which borrowers acted in response). *See also Dunn v. Borta*, 369 F.3d 421, 427 (4th Cir. 2004)(materiality is a question for the jury).

Here, Johnson has identified and pled in her AC that she reasonably relied upon Ocwen's unfair and deceptive actions which induced her to take actions and make choices. AC at ¶¶ 3, 31, 41-42, 44-46, 50-51, 55, 63, 72-73, 75.[15] The facts of this case mirror those in *Ademiluyi* in this regard. Here, Johnson has alleged that she reasonably relied on Ocwen's ability to collect from her despite its unwillingness to conduct any meaningful investigation of her dispute which she repeatedly reported to it (AC at ¶¶ 50-51, 57, 59) in reliance to its contestant misstatements and misrepresentations and omissions related to the well pled facts.

For this stage of the proceedings this is all that she is required to do. *Bank of Am., N.A. v. Jill P. Mitchell Living Trust*, 822 F. Supp. 2d 505, 532 (D. Md. 2011)*(*"The quantum of evidence on which a fact-finder could reasonably conclude that an alleged misrepresentation substantially induces a consumer's choice is relatively low"….and the Court of Appeals has found sufficient reliance where one representation was advanced by the defendant to the plaintiff who was

15 Ms. Johnson's reliance which is detailed in her AC includes payments to Ocwen (including early payments), writing to Ocwen in response to its errors, requests for reasonable investigations by Ocwen in response to its false claims, calling Ocwen's representation to request they correct their improper records, and writing to the credit bureause who in tern would ask Ocwen to investigate the information it furnished under the Fair Credit Reporting Act. Despite this reasonable action taken in response to Ocwen's false and misleading statements and even commencing this action, Ocwen proceeded to continue to make false, unfair, and deceptive threats of foreclosure and demands for money not due to it.

substantial induced to take action but without all the true facts); *Solomon v. Capital One Bank USA*, No. GJH-14-03638, 2014 WL 7336694, at *4 (D. Md. Dec. 19, 2014)(to show sufficient facts at the pleading stage to support the reliance element of a MCPA claim, Plaintiff needs to identify "statements or representations made by Defendant that induced [her] to take any action"); *Meyer v. Vantium Capital, Inc.*, No. CIV. WDQ-14-00032, 2014 WL 4267626, at *5-6 (D. Md. Aug. 27, 2014)(taking action to respond to a merchant's request for more information and foregoing other avenues of relief while waiting for merchant to fulfil promise constituted sufficient reliance at the pleading stage related to a MCPA claim)

Like the mortgage borrowers in *Ademiluyi*, *Piotrowski* and *Currie*, Ms. Johnson has presented sufficient well pled facts at the present stage of this action, assuming the truth of her allegations, to demonstrate Ocwen's misrepresentations, misstatements and otherwise unfair and deceptive acts and omissions including: (i) false statements and harassing phone calls that that she was in default when she was not (AC at ¶¶ 43, 44, 46-49, 50, 59-62), (ii) improper threats of foreclosure (AC at ¶¶ 3, 31, 46, 63), (iii) assessing improper late and junk fees to Johnson's account (AC at ¶¶ 31, 48, 50), (iv) omissions of its own prior statements to Johnson and the Bankruptcy Court (AC at ¶¶ 50, 51) and the dates it actually received certain payments (AC at ¶¶ 3, 50-51). [16]

---

16 Ocwen also claims that certain of its statements to Johnson which were made in writing on multiple occasions constitute "commercial puffing" and cannot ever constitute unfair and deceptive practices or statements actionable under the MCPA.  The off-repeated written representation to Johnson by Ocwen (on October 22, 2014, November 22, 2014, March 23, 2014, and April 21, 2015) that "[a]t Ocwen, we strive to provide service that will exceed your expectations. Having complete and accurate information is the first step in ensuring you receive this service" (AC at ¶¶ 44, 48, 60, 61) is the subject of Ocwen's puffing argument.  Johnson agrees that the first portion of the statement sounds like mere conjecture but the second part of the subject statement states a fact—i.e. the core fact of this that (i) Johnson gave Ocwen the "complete and accurate information" in response to its requests but it chose to ignore those facts, (ii) Ocwen performed no reasonable investigation, and (iii) Ocwen instead continued to make false threats

Johnson has also detailed her damages and losses sustained as a result of Ocwen's unfair and deceptive practices (AC at ¶¶ 5, 64-65). These damages and losses are also sufficient for this stage of the proceedings as Judge Russell has previously explained:

> The instant case is similar to *Barry* and *Allen* in that Mr. Marchese pled that he suffered emotional and physical distress, including severe anxiety, depression, insomnia, and stomach pains, in addition to bogus late fees, attorney fees, and damage to his credit. (Compl. ¶¶ 41, 55)…Thus, [Plaintiff] sufficiently pled actual injury or loss to state a claim for which relief can be granted under the MCPA.

*Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 468 (D. Md. 2013). *Piotrowski v. Wells Fargo Bank, N.A.*, No. CIV.A. DKC 11-3758, 2013 WL 247549, at *12 (D. Md. Jan. 22, 2013){[Pliantiff] avers that he suffered a variety of damages as a result of Wells Fargo's alleged conduct, including damage to his credit; lost time from work and legal fees to resolve his dispute without the need for litigation; and emotional distress in the form of anxiety and insomnia….the complaint's damages allegations are sufficient to survive a Rule 12(b)(6) motion. *See, e.g., Marchese,* 2013 WL 136427, at *12 (plaintiff sufficiently pled actual injury by alleging, *inter alia*, that he suffered emotional and physical distress; attorney fees; and damage to his credit); *Allen*, 2011 WL 3425665, at *10 (plaintiff's allegations of "damage to [her] credit score [and] emotional

against Johnson which are inconsistent with its own prior judicial statements. For this reason at this stage of the proceedings the Court should respectfully leave to the fact-finder whether or not Ocwen's defense of repeated commercial puffing is justified. *Compare Daley v. McNeil Consumer Products Co.*, 164 F. Supp. 2d 367 (S.D.N.Y. 2001) (statement by customer service representative that product could not cause rash goes directly to character and quality and therefore presents jury question); *Buonavolanto v. Fifth Third Bank*, No. 12 C 6498, 2013 WL 1668240, at *4 (N.D. Ill. Apr. 17, 2013)(the alleged misrepresentation needs to be examined "in the overall context of [plaintiff's] allegations and motion to dismiss action based upojn defendant's characterization of puffery denied); *Vader v. Fleetwood Enterprises, Inc.*, 201 P.3d 139 (Mont. 2009) (upholding jury's conclusion that advertising statement promising "flawless ride" was express warranty of motor home's chassis). For these reasons and authorities Johnson requests the Court deny Ocwen's commercial puffing argument.

damages" sufficient to allege "an actual injury or loss as a result of a prohibited practice under the MCPA")

Ocwen's various misrepresentations, misstatements and omissions, and her damages and losses as a result thereof. Ocwen is on sufficient notice of the claim and any "fact intensive" inquiry it seeks to make is more appropriate for later stages of the litigation and not at the motions to dismiss stage. *Tasciyan v. Med. Numerics*, 820 F. Supp. 2d 664, 673 (D. Md. 2011)(factual disputes by the parties are more appropriately considered after discovery). Defendant's motion to dismiss Ms. Johnson's Motion to Dismiss Johnson's MCPA claim in Count I should therefore be denied.

***ii. Maryland Consumer Debt Collection Act***

The only basis the Defendant claims for dismissal of Ms. Johnson's MCDCA claim in the AC are that she (i) has failed to make a "cure" payment to Ocwen and (ii) she has allegedly not adequately demonstrated that Defendant knew its demands for invalid sums were improper.

The Maryland Consumer Debt Collection Act ("MCDCA") prohibits Ocwen,[17] "[i]n collecting or attempting to collect an alleged debt [from]…Claim[ing], attempt[ing], or threaten[ing] to enforce a right with knowledge that the right does not exist." MD. CODE ANN. COM. LAW §14-202(8). This Court has explained the requirement of knowledge under the MCDCA as follows:

> This Court has previously construed the level of knowledge required under the MCDCA and has held that "[c]onsidering the remedial aim of the MCDCA and the

17 The MCDCA defines a collector to be any "persons collecting or attempting to collect an alleged debt arising out of a consumer transaction." MD. CODE ANN. COM. LAW § 14-201(b). The well-pled facts of the complaint describe Ocwen's attempts to collect invalid debts from Ms. Johnson. Com. ¶ 54.

> dilution of the statute that would result from a contrary interpretation, the Court holds that the term 'knowledge' in the Act does not immunize debt collectors from liability for mistakes of law." *Spencer v. Hendersen–Webb, Inc.*, 81 F.Supp.2d 582, 594 (D.Md.1999). In addition, the "knowledge" requirement of the MCDCA "has been held to mean that a party may not attempt to enforce a right with actual knowledge or with reckless disregard as to the falsity of the existence of the right." *Kouabo v. Chevy Chase Bank, F.S.B.,* 336 F.Supp.2d 471, 475 (D.Md.2004) (citing *Spencer,* 81 F.Supp.2d at 595). Moreover, this Court has further noted that "it does not seem unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." *Spencer,* 81 F.Supp.2d at 595 (quoting *Russell v. Equifax A.R.S.,* 74 F.3d 30, 35 (2d Cir.1996)) (in turn, quoting *FTC v. Colgate–Palmolive Co.,* 380 U.S. 374, 393, 85 S.Ct. 1035, 13 L.Ed.2d 904 (1965)). In the present case, Hilco undoubtedly went perilously close to an area of proscribed conduct in failing to abide by Maryland's licensing laws for debt collectors, and as discussed above, actually crossed the line.

*Bradshaw v. Hilco Receivables, LLC,* 765 F. Supp. 2d 719, 732 (D. Md. 2011).

By acting as Johnson's mortgage servicer, making demands for sums not legally due, and threatening foreclosure, Ocwen acted as a collector as the term is defined by MD. CODE ANN. COM. LAW §14-201(b). The underlying mortgage transaction and threat of foreclosure addressed in the AC constitutes a consumer transaction as defined MD. CODE ANN. COM. LAW §14-201(b) since it involves services and credit for Johnson's personal and household services.

Ocwen objects to Johnson's MCDCA claim because Johnson did not adopt its view and make a "cure" payment which according to her well pled facts is not due since she is current on her mortgage obligation. Respectfully, Johnson's MCDCA claim is based upon Ocwen's assertions and threats to foreclose and demands for sums invalidly due with the knowledge and in a manner inconsistent with the standard duty of care for mortgage servicers in Maryland. Md. Code Regs. 09.03.06.20.

Courts have held that a knowing violation of a consumer protection statute, such as the MCDCA, requires only a showing that the violator knows that he is engaging in an act that violates the law - evidence of specific knowledge that the act violates the law is not required to find a

knowing violation or even a willful violation, as ignorance of the law is no excuse for its violation. *Pacific Mortgage and Investment Group, Ltd. V. Horn,* 100 Md. App. 311 (1994); *Bond* v. *Polycycle, Inc.* 127 Md. App. 365 (1999); *Spencer* v. *Henderson-Webb,* 81 F. Supp. 2d 582, 594-95 (D. Md. 1999).

In *Spencer,* this Court held that a "knowledge" requirement for imposing statutory liability did not protect violators who made mistakes of law. *Id.* The *Spencer* court considered a case asserting, *inter alia,* violation of the MCDCA by a debt collector. *Id.* at 588. The plaintiff in that case alleged the debt collector violated a provision of the MCDCA prohibiting a collector from "claiming, attempting, or threatening to enforce a right with *knowledge* that the right does not exist." *Id.* at 594 (emphasis added). The defendant repeatedly claimed that its acts, including a misstatement of the applicable limitations period, were mistakes. *Id.* The court rejected the argument that the "knowledge" requirement of the MCDCA excused the debt collector from liability for is mistake of law concerning the limitations period. *Id.* at 594-95. The court stated:

> Considering the remedial aim of the MCDCA and the dilution of the statute that would result from a contrary interpretation the Court holds that the term 'knowledge' in the Act does not immunize debt collectors from liability for mistakes of law. This interpretation bears in mind the age-old maxim that ignorance of the law will not excuse its violation. *See Hopkins v. State,* 193 Md. 489, 498, 60 A.2d 456, 460 (1949), Moreover, in the context of consumer protection, 'it does not seem unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.' *Russell v. Equifax A.R.S.* 74 F.3d 30, 35 (2d Cir.1996) *(citing FTC v. Colgate-Palmolive Co.* 380 U.S.374, 393, 85 S.Ct. 1035, 13 L.Ed.2d 904(1965)). Professional debt collectors and their attorneys therefore must be held to be aware of laws affecting the validity of their collection efforts. *Cf. Golt v.Phillips,* 308 Md. 1, 10, 517 A.2d 328, 332 (1986) (applying similar rule to landlords in consumer protection context).

*Id. See also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* 130 S. Ct. 1605, 1622, 176 L. Ed. 2d 519 (2010)("Several States have enacted debt collection statutes that contain neither an

exemption for attorney debt collectors nor any bona fide error defense at all. See, *e.g.,* Mass. Gen. Laws, ch. 93, § 49 (West 2008); Md. Com. Law Code Ann. § 14-203 (Lexis 2005); Ore.Rev.Stat. § 646.641 (2007)").

Notwithstanding, Ocwen's conclusory argument, accepting the well pled facts of the AC as true, Ocwen knew that the amounts it claimed were owed and the amounts it claimed Plaintiff had failed to pay in the various statements and representations to Johnson were incorrect and invalid[18] since Ocwen also knew that at all times relevant herein that Ms. Johnson was current on her mortgage (as described in her confirmed chapter 13 Bankruptcy plan) (AC ¶¶ 22, 26, 28) and there was no basis whatsoever for Ocwen to threaten Ms. Johnson with foreclosure or negative credit reporting or claim she owed sums which were not contractually due and owing. (Com. ¶ 24, 28, 38-39, 42-46, 50- 52). Notwithstanding this knowledge, Defendant knowingly and sent Ms. Johnson those communications, fully intending for her to rely upon them, and attempting to collect on those invalid amounts. *See* AC ¶¶ 81-83.

Defendant's motion to dismiss Ms. Johnson's Motion to Dismiss Johnson's MCDCA claim in Count I should therefore be denied.

G. Ms. Johnson Has Stated Proper Claims Under the Maryland Mortgage Fraud Protection Act

The Mortgage Fraud Protection Act, MD. CODE ANN., REAL PROP. § 7–401 *et seq.* ("MMFPA")

18 It is axiomatic that a mortgage servicer has a duty under Maryland law to know what is actually owed on the loan it is collecting upon. *Compare* MD. CODE ANN., COM. LAW § 12-308; MD. CODE ANN., COM. LAW § 13-316.

> [i]n its broadest sense...simply states "[a] person may not commit mortgage fraud." *Id.* § 7–402. Relevant to the present action, the statute defines mortgage fraud as:
>
> (1) Knowingly making any deliberate **misstatement, misrepresentation, or omission** during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process;
>
> (2) Knowingly creating or producing a document for use during the mortgage lending process that contains a **deliberate misstatement, misrepresentation, or omission** with the intent that the document containing the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process;
>
> (3) Knowingly using or facilitating the use of any **deliberate misstatement, misrepresentation, or omission** during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process;
> ...; or
>
> (6) Filing or causing to be filed in the land records in the county where a residential real property is located, any document relating to a mortgage loan that the person knows to contain a deliberate misstatement, misrepresentation, or omission.
>
> MD. CODE ANN., REAL PROP. § 7–401(d)(1)-(6). The statutory definition of the "mortgage lending process" includes "(i) [t]he solicitation, application, origination, **negotiation, servicing,** underwriting, signing, closing, and funding of a mortgage loan; and (ii) the notarizing of any document in connection with a mortgage loan." *Id.* § 7–401(e)(2).

*Stovall v. SunTrust Mortg., Inc.*, CIV.A. RDB-10-2836, 2011 WL 4402680. *9-10 (D. Md. Sept. 20, 2011)(emphasis added). *See also Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 469 (D. Md. 2013)("Although Chase seeks to curtail the breadth of the statute to exclude loan servicing with regard to defaulting borrowers, this Court has held that 'the plain language of the statute clearly countenances post-closing servicing activities.' *Stovall*, 2011 WL 4402680, at *10"); *Ademiluyi v. PennyMac Mortgage Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 531-32 (D. Md. 2013)("The plain text of the MMFPA creates a statutory duty to disclose and a related

action for fraud. As noted, mortgage fraud under R.P. § 7–401(d) includes the making, knowingly and with the 'intent to defraud,' of an 'omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process'"); *Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 799-800 (D. Md. 2013); *Piotrowski v. Wells Fargo Bank*, N.A., CIV.A. DKC 11-3758, 2013 WL 247549, *13 (D. Md. Jan. 22, 2013).

If the common law, including common law fraud, were sufficient to address the scope of issues intended to be addressed by the MMFPA, then there would have been no need for the legislature to enact the MMFPA. *Robinson v. State*, 353 Md. 683, 694, 728 A.2d 698, 703 (1999)("a cardinal rule of statutory construction to give effect to the intent of the Legislature" and "where a statute deals with an entire subject-matter…the statute is generally construed as abrogating the common law as to that subject). *Robinson v. State*, 353 Md. 683, 693, 728 A.2d 698, 702 (1999). Here, however as explained the Fourth Circuit previously, "remedial legislation should receive a broad interpretation to effectuate its purposes." *D.L. ex rel. K.L. v. Baltimore Bd. of Sch. Comm'rs*, 706 F.3d 256, 260 (4th Cir. 2013)(citing *Tcherepnin v. Knight*, 389 U.S. 332, 336, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967)). *See also Pak v. Hoang*, 378 Md. 315, 324-26, 835 A.2d 1185, 1190-91 (2003)(explaining that remedial statutes under Maryland law are recognized by providing remedies and improved remedies not previously available under prior law including common law and that court should not narrowly construe the statute which would only "perpetuate the very evils to be remedied....")(internal quotations and citations omitted).

Ocwen's only additional grounds to dismiss Johnson's MMFPA claim not previously

addressed *supra* are (i) its disputed belief that Johnson was "delinquent on her Loan" and (ii) Johnson allegedly failed to pled Ocwen's intent to defraud. Mem. in Sup. of MTD AC at Page 23-24. Initially, it should be noted that at the motion to dismiss stage the analysis of the claims presented is the same under the MCPA and the MMFPA. *Marchese v. JPMorgan Chase_Bank, N.A.,* 917 F. Supp. 2d 452, 468-469 ("The grounds for denying the Motion to Dismiss with respect to [mortgage servicing practices] under the MMFPA involve the same analysis the Court conducted under the MCPA"); *Piotrowski v. Wells Fargo Bank, N.A.*, CIV.A. DKC 11-3758, 2013 WL 247549, *13 ("Because Mr. Piotrowski states an MCPA claim based on Wells Fargo's alleged representations and omissions about its consideration of his loan modification requests, the complaint also states an MMFPA claim based on the same conduct"). Therefore for the additional reasons stated by Ms. Johnson in opposition to dismissal of her MCPA claim, she requests the Court to deny the motion to dismiss her MMFPA claim as well. In addition, Ocwen's disputed factual assertion of its counsel that Johnson concerning the status of the loan is not sufficient basis at this stage of the proceedings to dismiss Johnson's MMFPA claim. *Dolgaleva*, 364 F. App'x at 825.

Ocwen cites no authorities to support its claim that Johnson has not adequately the "intend to defaud" element of the MMFPA claims. It also overlooks the well pled facts of the AC which plead this element. AC at ¶¶ 43-44, 46-51, 59-63. The Court of Appeals has explained in other contexts a similar standard for "intent to defraud" as follows:

> Underlying an "intent to defraud" is some form of bad faith by the defendant. In order to have an intent to defraud, the defendant must act dishonestly or at least with reckless indifference. *See Everett v. Baltimore Gas & Elec.*, 307 Md. 286, 300, 513 A.2d 882, 889 (1986) (stating that an element of fraud is knowledge or "such reckless indifference ... as to impute knowledge to the party."). In a recent products liability case, we discussed "intent to defraud" and concluded, for the purpose of

> determining whether punitive damages were available, that the products liability equivalent of "intent to defraud" is "actual knowledge of the defect and deliberate disregard of the consequences," *Owens–Illinois v. Zenobia,* 325 Md. 420, 462, 601 A.2d 633, 653, *reconsideration denied,* 325 Md. 665, 602 A.2d 1182 (1992), a standard that "requires a *bad faith* decision by the defendant to market a product...." *Id.* at 463, **743 601 A.2d at 653 (emphasis added). We also stated:
>
> > **"Actual knowledge [for intent to defraud], however, does include the wilful refusal to know**. *See, e.g., State v. McCallum,* 321 Md. 451, 458–461, 583 A.2d 250, 253–255 (1991) (Chasanow, J., concurring) (" '[K]nowledge' exists where a person believes that it is probable that something is a fact, but deliberately shuts his or her eyes or avoids making reasonable inquiry with a conscious purpose to avoid learning the truth.")." *Id.* at 462 n. 23, 601 A.2d 654 n. 23.

*Ferguson Trenching Co. v. Kiehne*, 329 Md. 169, 184-85, 618 A.2d 735, 742-43 (1993) (emphasis added).

Respectfully, Johnson's claim under the MMFPA against Ocwen essentially boils down to a willful blindness. Ocwen has elected not to stand by its own certified statements and representations, made under penalties of perjury, to the Bankruptcy Court and to Johnson. Instead the well pled facts and its own argument to this Court demonstrate that as a creditor to Johnson's prior bankruptcy case it is entitled to claim Johnson owes sums which were paid to it (and its predecessor during the bankruptcy plan). Ocwen, nor any other party to a Maryland mortgage transaction, may simply act deliberately and disregard the law on the one hand by blinding itself. *Ferguson*, 329 Md. at 184-85. In addition, good faith does not apply as a defense in an intention to defraud claim where it is based upon legal advice. *State v. Neger*, 427 Md. 582, 601, 50 A.3d 591, 602 (2012)(rejecting good faith defense when defendant was not a novice and was represented by counsel).

Defendant has failed to present any basis for the Court to dismiss Plaintiff's MMFPA claim

in Count II of the AC based upon the Defendant's material misrepresentations, misstatements and omissions, the Defendant's motion must be denied. The MMFPA must been seen as a remedial statute and to construe narrowly as advocated by Ocwen would be akin to permitting the 'very evils to [be] remedied' by the statute. *Pak v. Hoang*, 835 A.2d at 1190-91.

H. Plaintiff has Stated Plausible and Proper Claims Against Ocwen for its Violations of the New Requirements of the Real Estate Settlement Procedures Act Effective Since January 10, 2014

Johnson pleads sufficient facts to support her claim against Ocwen pursuant to the federal Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C.A § 2605 and 12 C.F.R. § 1024.35 following January 10, 2014 when new requirements became effective. AC at ¶¶ 105-115. Specifically, Johnson's RESPA claim concerns: (i) Ocwen's failure to process Johnson's loss mitigation application pursuant to 12 CFR § 1024.41 of Regulation X and to exercise reasonable diligence in reviewing Plaintiff's application and communicating with her to complete the application (AC at ¶¶ 105-106, 110-112); (ii) Ocwen has a duty to respond accurately and truthfully to a Qualified Written Request but failed to do so ("QWR") (AC at ¶¶ 105, 107);[19] (iii) Ocwen failed to stop its negative credit reporting related to Johnson for a period of not less than 60 days following receipt of Johnson's QWR (AC at ¶¶ 105, 108); and (iv) Ocwen failed to conduct a reasonable investigation once it received Johnson's QWR (AC at ¶¶ 105, 109). Johnson has also identified, in addition to her own detailed experiences, multiple additional matters, including federal enforcement actions and a judgment of this Court, which in a light most favorable to her demonstrate Ocwen has a pattern and practice of similar violations (AC at ¶¶ 105-114). Finally,

19 Under the regulations of the Consumer Financial Protection Bureau a QWR may be in the form of a Notice of Error and/or a Request for Information since January 10, 2014.

Johnson, has has also identified specific damages and losses she is seeking in this action and her RESPA claims (AC at ¶¶ 64-65, 105, 115).

Ocwen overlooks the actual facts pled in the AC, misstates Johnson's actual RESPA claim before the Court, and seeks just partial claim dismissal of each of Johnson's RESPA claims on the following bases: (i) Ocwen's belief that Ms. Johnson's claims concern just her dissatisfaction with Ocwen's response to her Notice of Error and Request for Information (Mem. in Sup. of MTD AC at Pages 27-2828-29); (ii) Ocwen believes that it is not required to process Johnson's loss mitigation application until it says she has completed the application and that it may essentially ask for information over and over as long as it likes (*Id.* at Page 29-30); and (iii) Ocwen believes Johnson has not sufficiently pled her pattern and practice damages required for Johnson to receive statutory damages. These arguments simply are not supported by the well pled facts and the law which applies to this action.[20]

Since the law and regulations behind RESPA has changed and the older cases interpreting the are outdated, a general review would be helpful for the Court to understand the current law that applies to the claims before the Court in this action. The Consumer Financial Protection Bureau ("CFPB" or "Bureau") has described the role of mortgage servicers in today's marketplace as follows:

> Servicers' duties typically include billing borrowers for amounts due, collecting and allocating payments, maintaining and disbursing funds from escrow accounts, reporting to creditors or investors, and pursuing collection and loss mitigation activities (including foreclosures and loan modifications) with respect to delinquent borrowers. Indeed, without dedicated companies to perform these activities, it is

20 The case law concerning RESPA which predates January 10, 2014 transactions respectfully is irrelevant in many instances. The Dodd-Frank Act gave the CFPB with regulatory authority to expand RESPA and it has exercised that statutory authority to change the law and expectations of for mortgage servicers like Ocwen.

> questionable whether a secondary market for mortgage-backed securities would exist in this country. Given the nature of their activities, servicers can have a direct and profound impact on borrowers.
>
> Mortgage servicing is performed by banks, thrifts, credit unions, and non-banks under a variety of business models. In some cases, creditors service mortgage loans that they originate or purchase and hold in portfolio. Other creditors sell the ownership of the underlying mortgage loan, but retain the mortgage servicing rights in order to retain the relationship with the borrower, as well as the servicing fee and other ancillary income. In still other cases, servicers have no role at all in origination or loan ownership, but rather purchase mortgage servicing rights on securitized loans or are hired to service a portfolio lender's loans.

Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 FR 10696-01 (footnotes omitted).

To regulate the work of mortgage servicers Congress enacted RESPA and granted the CFPB specific rulemaking authority to establish regulations governing the practices of mortgage servicers. 12 U.S.C.A. § 2605(k)(1)(E). Congress provided that mortgage servicers who violate RESPA and Regulation X's requirements may be held liable to consumers for their actual and/or statutory damages and reasonable attorney fees.

> Whoever **fails to comply with any provision of this section** shall be liable to the borrower for each such failure in the following amounts: (1) Individuals In the case of any action by an individual, an amount equal to the sum of--(A) any actual damages to the borrower as a result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000.

12 U.S.C.A. § 2605(f)(1) (emphasis added).

Relevant to the claims before the Court, the RESPA requirements for mortgage servicers include the following:

1. *Borrowers Have a Statutory Right to Send their Mortgage Servicer a Qualified Written Request and Receive a Bona Fide Response*

Pursuant to 12 U.S.C.A. § 2605(e), a mortgage servicer has a duty to respond to certain

inquiries or qualified written requests ("QWR") from borrowers.

> A qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--
>
> > **(i)** includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
> > **(ii)** includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C.A. § 2605(e)(1)(B).

In addition, "[a] servicer of a federally related mortgage **shall not…fail to take timely action** to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C.A. § 2605(k)(1)(C)(emphasis added).

Recently,

> on January 10, 2014, a new regulatory regime went into effect through the Dodd–Frank Wall Street Reform and Consumer Protection Act of 2010. Pub.L. No. 111–203, 124 Stat. 1376 (July 21, 2010) ("Dodd–Frank Act"). Pursuant to this Act, new regulations were promulgated entitled the "Mortgage Servicing Rules under the Real Estate Settlement Procedures Act (Regulation X)" and codified at 12 C.F.R. § 1024. According to the Bureau of Consumer Financial Protection ("CFPB"),
>
> > [T]his final rule implements Dodd–Frank Act sections addressing servicers' obligations to correct errors asserted by mortgage loan borrowers; to provide certain information requested by such borrowers; and to provide protections to such borrowers in connection with force-placed insurance. Additionally, this final rule addresses servicers' obligations to establish reasonable policies and procedures to achieve certain delineated objectives; to provide information about mortgage loss mitigation options to delinquent borrowers; to establish policies and procedures for providing delinquent borrowers with continuity of contact with servicer personnel capable of performing certain functions; and to evaluate borrowers' applications for available loss mitigation options. Further, this final rule modifies and streamlines certain existing servicing-related provisions of Regulation X. For instance, this final rule revises provisions relating to mortgage servicers' obligation to provide disclosures to borrowers in connection with a transfer of

> mortgage servicing, and mortgage servicers' obligation to manage escrow accounts, including restrictions on purchasing force-placed insurance for certain borrowers with escrow accounts and requirements to return amounts in an escrow account to a borrower upon payment in full of a mortgage loan. 78 Fed.Reg. 10,887 (Feb. 14, 2014).

*Wilson v. Bank of Am., N.A.*, 48 F. Supp. 3d 787, 799-800 (E.D. Pa. 2014); *Thomason v. One W. Bank, FSB*, No. 13-11987, 2014 WL 7139750, at *4-5 (11th Cir. Dec. 16, 2014)(reversing dismissal of *pro se* borrower's proposed amended RESPA claim holding "[borrower] was entitled to written explanations in response to his qualified written requests. The allegations in his proposed amended claim that IndyMac failed to respond accordingly are sufficient to state a claim for relief under RESPA").

***1.*** *A Notice of Error*

> A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred. A notice on a payment coupon or other payment form supplied by the servicer need not be treated by the servicer as a notice of error. A qualified written request that asserts an error relating to the servicing of a mortgage loan is a notice of error for purposes of this section, and a servicer must comply with all requirements applicable to a notice of error with respect to such qualified written request.

12 C.F.R. § 1024.35(a).

A servicer's responsibility for responding to a notice of error is a material duty and cannot be avoided by a mortgage servicer's merely pretextual determination or canned responses as issued by Ocwen in this case. As explained by one court:

> [A mortgage servicer's] obligations under Regulation X cannot be so lightly cast aside. A notice of error or request for information would be considered duplicative **only if [the mortgage servicer] had previously complied with the disclosure and response requirements** of 12 C.F.R. § 1024.35(d) and (e) and 12 C.F.R. § 1024.36(c) and (d). The Court assumes, for purposes of this motion, that responding to an earlier qualified written request could satisfy the "previously complied" requirements. Nevertheless, the requests were not duplicative and **there was no**

> **previous compliance.** The time periods involved in the two inquiries were distinct, and **[the mortgage servicer] did not substantively respond** to the attorney fee issue when it was raised in December 29, 2013. The last communication from [the mortgage servicer] simply requested another extension of time in which to investigate the attorney's fees and costs levied in November 2013. No further response is in evidence. The March 2014 inquiries involved subsequent charges levied and payments made. Even if there had been a temporal overlap, [the mortgage servicer's] **failure to respond to the first request for information cannot justify a refusal to respond to the second request on the grounds that it was "duplicative**."

*Lucero v. Cenlar, FSB*, No. C13-0602RSL, 2014 WL 4925489, at *6 (W.D. Wash. Sept. 30, 2014) (emphasis added).

Whereas before January 10, 2014 the

> pre-Regulation X statutory language required nothing more than "an investigation" and a "written explanation" that the servicer believes supports its determination that the account is correct. As such, the courts—including those in *Vassalotti* and *Starkey*—could correctly conclude that RESPA imposed mere procedural obligations to investigate and respond, without any substantive obligation to ensure that the investigation was reasonable and the response was thorough. Regulation X, however, altered the landscape of those obligations.

*Wilson*, 48 F. Supp. 3d at 804.

The pre-January 10, 2014 standard, however, has been effectively reversed by the Bureau's changes to Regulation X that now require a "reasonable investigation." *Id.* All of the well pled allegations in Johnson's AC involve post-January 10, 2014 RESPA requirements.

*2. A Servicer Must Properly Accept and Credit Payments from a Borrower*

Mortgage servicers have a mandatory duty to comply with an "obligation found by the Bureau…to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C.A. § 2605(k)(1)(E). One such obligation is "to credit a payment to a borrower's mortgage loan account as of the date of receipt [to avoid violation of] 12 CFR 1026.36(c)(1)." 12 C.F.R. § 1024.35(b)(3).

The CFPB explained this duty further as follows:

> A failure to accept a proper payment will necessarily have implications for the correct application of borrower payments. The Bureau further believes that proper acceptance of payments is a standard servicer duty.

Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 FR 10696-01. *See also Calloway v. Green Tree Servicing, LLC*, 599 F. Supp. 2d 543, 546 (D. Del. 2009)("fail[ure] to properly credit payments…miscalculate[] interest payments for tax purposes, and failed to respond to inquiries" are a proper RESPA claim). *Compare* 12 U.S.C.A. § 2605(i)(3)(defining "the term 'servicing' to mean[] receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan…").

As noted above, Ocwen, in the face of overwhelming evidence that Johnson was and remains current and her payments timely (and early), persisted in incorrectly accounting for her payments and failing to credit his payments correctly. AC ¶¶ 54, 59-61, 63. Such action violates 12 CFR 1026.36(c)(1).

*3. A Mortgage Servicer Must Conduct a Reasonable Investigation In Response to a QWR*

RESPA also requires that a mortgage servicer must take certain actions in response to a QWR, regarding issues other than a correct payoff statement discussed *supra*, within thirty days of receipt of the QWR. 12 U.S.C.A. § 2605(e)(2). A servicer may extend its period of response to a QWR "if, before the end of such 30-day period, the servicer notifies the borrower of the extension and the reasons for the delay in responding." 12 U.S.C.A. § 2605(e)(4). A servicer is required to respond to the borrower with the information actually sought. *Bulmer v. MidFirst Bank, FSA*, 59 F. Supp. 3d 271, 277 (D. Mass. 2014)("the duty to respond to a QWR, as articulated in both *McDonald* and *Santander Bank*, would ring hollow if it did not also impart an obligation

to provide the information requested").

This duty to respond to a borrower's inquiry with relevant information was explained by one court as follows:

> While this Court does not suggest that a servicer must, in order to avoid liability under RESPA, respond in detail to every aspect of every QWR tendered by a borrower, the servicer must, whatever response it chooses to make, fairly meet the substance of the QWR. In this case, Marais' information requests were generated because of her belief that her payments had been misapplied, fees wrongfully assessed, and payments counted late when they had been timely. (Doc. 43, Ex. A–10, QWR at 53–54). Under the circumstances, RESPA required a response that dealt with this prime concern by correcting the account, investigating and explaining why the account was correct, or investigating and explaining the issue by providing information about it. 12 U.S.C. § 2605(e)(2)(A–C). Chase did none of these. Chase **merely spat-out a form response enclosing copies of Marais' account documents**.

*Marais v. Chase Home Fin., LLC*, No. 2:11-CV-314, 2014 WL 2515474, at *10 (S.D. Ohio June 4, 2014) (emphasis added). *See also Friedman v. Maspeth Fed. Loan & Sav. Ass'n*, No. 13-CV-6295, 2014 WL 3473407, at *9 (E.D.N.Y. July 14, 2014)("Because plaintiff has now provided evidence plausibly demonstrating for purposes of pleading that defendant gave incorrect information, the complaint states a valid claim under RESPA").

In addition,

> Regulation X…altered the landscape of those obligations. For example, in response to a Notice of Error, a servicer must now conduct a "reasonable investigation." The addition of the word "reasonable" seemingly imposes a substantive obligation that is not satisfied by the mere procedural completion of some investigation followed by a written statement of reasons.

*Wilson*, 48 F. Supp. 3d at 804. *See also* 12 C.F.R. §§ 1024.35(e)(1)(i)(B), 1024.35(e)(1)(ii), 1024.35(e)(2)(ii)(describing that a servicer must conduct a reasonable investigation when responding to notice of errors).

Again, as described *supra*, Ocwen has never conducted any reasonable investigation of the

true facts which itself verified and certified to the Bankruptcy Court as true and accurate. Instead it seeks to disregard its own prior statements. These failures violate 12 U.S.C.A. § 2605(e)(2).

*4. A Mortgage Servicer has a Duty to Protect a Borrower's Credit Rating While Investigating a Borrower Dispute Relating to the Borrower's Payments*

> During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, **a servicer may not provide information regarding any overdue payment**, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under section 1681a of Title 15).

12 U.S.C.A. § 2605(e)(3)(emphasis added).

As explained by one court

> [A servicer is] forbidden, under 12 U.S.C. § 2605(e)(3), to report [borrower's] alleged default for 60 days, beginning on the date [servicer] received [borrower's] QWR. [Borrower] alleges that Chase ignored this obligation and reported her anyway.

*Marais v. Chase Home Fin., LLC*, No. 2:11-CV-314, 2014 WL 2515474, at *11 (S.D. Ohio June 4, 2014). *See also Hutchinson v. Delaware Sav. Bank FSB*, 410 F. Supp. 2d 374, 383 ("As the court in *Cortez* held, 'denial of credit because of the reporting of [delinquent charges] to credit reporting agencies' can sustain a claim of actual damages under RESPA. *Cortez,* 2000 WL 536666, **11–12, 2000 U.S. Dist. LEXIS 5705 at *39–40")(footnote omitted).

The AC shows that Ocwen has violated 12 U.S.C.A. § 2605(e)(3) as well. Ocwen does not even seek dismissal of this claim directly by not even addressing it in its papers. Therefore Ocwen has conceded that Johnson has pled a proper claim under RESPA

Defendant Ocwen's Motion to Dismiss Plaintiff's RESPA claim in Count V of the AC should be denied for all the reasons stated herein.

I. <u>Ms. Johnson Has Stated Proper Claims Against Ocwen for Injunctive, Declaratory, and Common Law Accounting Related to her Mortgage Loan</u>

Ocwen seeks to dismiss Johnson's remaining claims for injunctive relief and common law accounting in Counts III and IV of the AC. Respectfully, these claims are sufficiently pled and since she has stated other claims before the Court, it would be premature to dismiss these claims at this time. *1899 Holdings, LLC v. 1899 Liab. Co.*, No. CIV. CCB-12-297, 2013 WL 142303, at *5 (D. Md. Jan. 8, 2013) aff'd, 568 F. App'x 219 (4th Cir. 2014)(dismissal of accounting claim was proper when no other viable claim was before the court).

## V. CONCLUSION

Based upon the foregoing, Ms. Johnson asks the Court to Grant her Cross Motion for Partial Summary Judgment and to deny Ocwen's Motion to Dismiss her Amended Complaint.

Respectfully submitted,

*//ss//Phillip R. Robinson*__________________
Phillip R. Robinson
CONSUMER LAW CENTER, LLC
8737 Colesville Road, Suite 308
Silver Spring, MD 21910
(301) 448-1304
*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing document will be served on the Defendant in this matter along with the Complaint once the Writ of Summons has been issued by the honorable Clerk.

*//ss//Phillip R. Robinson*__________________
Phillip R. Robinson